# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

TRINA H.[1],                                Case No. 1:22-cv-338
    Plaintiff,                             Litkovitz, M.J.

vs.

COMMISSIONER OF                      **ORDER**
SOCIAL SECURITY,
    Defendant.

Plaintiff Trina H. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 10) and the Commissioner's response in opposition (Doc. 12).

## I. Procedural Background

Plaintiff protectively filed applications for disability insurance benefits (DIB) and SSI on April 15, 2019, alleging disability since January 1, 2005, due to fibromyalgia, back problems, migraines, sciatica hand problems, knee problems, depression, carpal tunnel syndrome, diabetes, and arthritis. (Tr. 277). The applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Christopher S. Tindale on October 19, 2020. At the hearing, plaintiff amended her alleged onset date of disability to April 15, 2019. As a result, the ALJ determined plaintiff

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

would not be entitled to DIB because her disability insured status expired before the amended onset date. (Tr. 16, citing 20 C.F.R. §§ 404.130, 404.131, and 404.315). Plaintiff withdrew her request for a hearing on her DIB claim, and the ALJ adjudicated plaintiff's SSI claim only. (Tr. 16-17). Plaintiff and a vocational expert (VE) appeared telephonically and testified at the ALJ hearing. (Tr. 42-61). On March 11, 2021, the ALJ issued an unfavorable decision. (Tr. 13-41). The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-7).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

    3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

    4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

    5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920 (b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

    **B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

    1. The [plaintiff] has not engaged in substantial gainful activity since April 15, 2019, the amended onset date and application date (20 CFR 416.971 *et seq.*).

    2. The [plaintiff] has the following severe impairments: disorders of the cervical and lumbar spine, peripheral neuropathy, arthritis, obesity, fibromyalgia, rheumatoid arthritis, diabetes mellitus, mood disorder, anxiety disorder, post-traumatic stress disorder (PTSD), and history of drug and alcohol abuse (20 CFR 416.920(c)).

3

3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can occasionally climb ramps and stairs, but she can never climb ladders, ropes, or scaffolds. She can frequently balance, kneel, crawl, but occasionally stoop, and crouch. She has to avoid concentrated exposure to extreme cold, extreme heat, humidity. She must avoid even moderate exposure to dangerous hazards of unprotected heights and dangerous heavy moving machinery. She is limited to frequent handling and fingering. She is limited to simple, routine tasks consistent with unskilled work in a work environment free of fast production rate or pace work. She can have no contact with the public, occasional contact with supervisors, and only occasional and superficial contact with co-workers with superficial contact defined as no tandem tasks. She must work in a low stress environment defined as having only occasional changes in the work setting and only occasional decision making required.

5. The [plaintiff] has no past relevant work (20 CFR 416.965).

6. The [plaintiff] was born [in] . . . 1972 and was 47 years old, which is defined as a younger individual age 18-49, on the amended onset date (20 CFR 416.963).

7. The [plaintiff] has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 416.968).

9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969a).[2]

10. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since April 15, 2019, through the date of this decision (20 CFR 404.1520(g) and 20 CFR 416.920(g)).

(Tr. 20-35).

---

[2] The ALJ relied on the VE's testimony to find that plaintiff could perform the requirements of representative light, unskilled occupations such as merchandise marker (219,000 jobs in the national economy); cleaner/housekeeper (423,000 jobs in the national economy); and shelving clerk (16,000 jobs in the national economy); and representative sedentary, unskilled occupations such as document preparer (29,000 jobs in the national economy); assembler (25,000 jobs in the national economy); and surveillance system monitor (30,000 jobs in the national economy). (Tr. 34-35, 57).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citing *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

### D. Specific Errors

On appeal, plaintiff raises three assignments of error: (1) the ALJ failed to properly consider the opinion of primary care physician, Robin Wright, M.D.; (2) the ALJ's residual functional capacity (RFC) is unsupported by substantial evidence as it is based on his own lay interpretation of the evidence; and (3) the ALJ erred by failing to incorporate use of plaintiff's medically required walker into the RFC. (Doc. 10).

The Commissioner counters that the ALJ's RFC is supported by substantial evidence, and he reasonably evaluated the state agency assessments and other evidence. The ALJ also reasonably omitted the use of an assistive device in the RFC considering the evidence showing plaintiff had a normal gait and muscle strength and did not use such a device. Additionally, the ALJ properly evaluated the opinion of Dr. Wright and discounted it because it was not supported by Dr. Wright's own records, and it was inconsistent with the other evidence of record. (Doc. 12).

*1. The ALJ's Evaluation of the Medical Opinion Evidence*

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions. *See* 20 C.F.R. § 416.920c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions.[3] *Id*. The Commissioner will "not defer or give any specific evidentiary weight,

---

[3] For claims filed before March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "The

including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[4], including those from your medical sources." 20 C.F.R. § 416.920c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 416.920c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[5] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 416.920c(c)(2). The ALJ is required to "explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. §

---

Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

[4] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

[5] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

416.920c(b)(2). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 416.920c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 416.920c(d).

      Plaintiff's first assignment of error challenges the ALJ's evaluation of the medical source opinion of plaintiff's primary care physician, Robin A. Wright, M.D., for persuasiveness. (Doc. 10 at PAGEID 2882-2888). On January 24, 2019, Robin A. Wright, M.D., completed a physical assessment of plaintiff's abilities. After listing plaintiff's diagnoses as rheumatoid arthritis, fibromyalgia, severe depression, and chronic back pain with sciatica, Dr. Wright opined that plaintiff's symptoms would constantly interfere with the attention and concentration required to perform simple work-related tasks. She also assessed that plaintiff would need to take unscheduled breaks every ten to fifteen minutes. As to plaintiff's functional abilities, Dr. Wright opined that plaintiff could not walk a city block; she could occasionally lift up to ten pounds; she was limited to sitting five hours total in an 8-hour workday and standing and walking one hour total; and she could use hands and fingers for thirty percent of the workday and arms for twenty percent of the workday. Dr. Wright found that plaintiff would need to recline or lie down during an 8-hour workday in excess of the typical 15-minute breaks and 30-to-60-minute lunch. She

concluded that plaintiff would be absent more than four times per month due to her limitations. (Tr. at 370-71).

The ALJ did not find Dr. Wright's opinions persuasive, noting "they are extreme and not consistent with the record." (Tr. 32). The ALJ stated:

> Her opinion from January 2019 was offered prior to the period at issue. Further, both opinions are conclusory with little to no explanation of the objective evidence relied upon when formulating the specific opinion. Dr. Wright's own exam finding's [sic] continuously showed the claimant had normal range of motion of her musculoskeletal system with no mention of any neurological deficits or gait abnormalities. (Exhibit C4F/21, C6F/51, 71, 79, C13F/6, 51, 63, 73, 82, 91, 100, 109). In addition, it was often reported the claimant's workup to find the etiology for her dizziness was unremarkable. (Exhibit C4F/11, 13, C13F/3). There is little information to support that her cane is medically necessary.
>
> Moreover, the longitudinal record indicates the claimant was fairly normal on physical examinations, her medication and treatment helped, and her activities of daily living are mostly intact. For example, the claimant's exams often showed her gait along with strength and sensation in her bilateral extremities were normal. (Exhibit C4F/15, C11F/94, 136, 170, 269, C12F/17). Further, there was no evidence in the record to support the upper extremity limitations as the claimant's hand x-ray was unremarkable and her exams frequently showed normal strength and no synovitis. (Exhibit C4F/13, C11F/91, 96, C12F/17). In addition, the record showed the claimant exercised regularly, she went shopping, and she babysat her grandkids often. (Exhibit C5E/5, C3F/69, C8F/9, C10F/3-4, 5, 21, C12F/8).

(Tr. 32-33).

Plaintiff contends the ALJ erred when he discounted Dr. Wright's opinion because it pre-dated plaintiff's alleged onset date by only four months. Plaintiff is correct that evidence predating the alleged onset date of disability is not "necessarily irrelevant or automatically barred from consideration" and may "when evaluated in combination with later evidence, . . . help establish disability." *O'Malley v. Comm'r of Soc. Sec.*, 210 F. Supp. 3d 909, 915 (S.D. Ohio 2016) (quoting *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 414 (6th Cir. 2006)). Here,

9

however, the ALJ cited several other reasons for finding Dr. Wright's opinion unpersuasive in addition to the one challenged by plaintiff: Dr. Wright's opinion was conclusory and not supported by her own examination findings; the workup for an etiology of plaintiff's dizziness was unremarkable; there was little information showing a cane was medically necessary; the longitudinal evidence showed fairly normal examination findings and treatment was helpful; the objective evidence did not support the upper extremity limitations that Dr. Wright imposed; and plaintiff's daily activities did not support the extreme limitations imposed by Dr. Wright. Apart from the longitudinal evidence, which is discussed below, plaintiff does not challenge any of the other reasons cited by the ALJ for his decision. Given the numerous other reasons identified by the ALJ and not challenged by plaintiff, the Court finds the ALJ's reference to the timing of Dr. Wright's opinion is not reversible error.

      Plaintiff also alleges the ALJ mischaracterized the record when discussing the longitudinal evidence and argues these records support Dr. Wright's assessed limitations. Plaintiff cites only two records in this regard: Dr. Wright's April 15, 2019 treatment notes addressing plaintiff's complaints of fatigue and memory loss; and rheumatologist Dr. Zeenat Ali's May 2, 2019 notes evaluating plaintiff's fibromyalgia and polyarthralgia impairments. Dr. Wright's April 2019 notes reflect plaintiff's complaints of forgetfulness, which Dr. Wright diagnosed as "pseudodementia vs. New and early onset Alzheimers." (Tr. 483). Testing on the Montreal Cognitive Assessment (MoCA) was indicative of moderate cognitive impairment, and plaintiff was prescribed medication to treat. Plaintiff also complained of chronic dizziness, for which she was prescribed mododrine. (*Id*.). Dr. Ali's rheumatology notes from May 2019

reflect plaintiff's complaints of constant pain throughout her body, swelling in her hands and feet, and stiffness despite treatment with Gabapentin. Plaintiff also endorsed depression, sleep disturbance, fatigue, memory loss, and brain fog. (Tr. 489). Following an examination, plaintiff was assessed with seronegative rheumatoid arthritis, maintenance chemotherapy, primary osteoarthritis of both knees, and fibromyalgia. (Tr. 493). Plaintiff was advised to continue Methotrexate, restart Prednisone taper, and begin Humira and Prednisone. (Tr. 493). Plaintiff contends the "ALJ did not articulate consideration of this probative evidence and as a result did not engage in meaningful consideration of the supportability or consistency of the opinion—leaving the analysis legally insufficient." (Doc. 10 at PAGEID 2888).

Contrary to plaintiff's argument, the ALJ considered these treatment notes along with the other record evidence, all of which substantially support the ALJ's finding that Dr. Wright's opinion was not persuasive. Plaintiff suggests the cognitive and dizziness issues reflected in Drs. Wright's and Ali's treatment notes support Dr. Wright's functional assessment listing more restrictive limitations. Yet Dr. Wright failed to even mention plaintiff's cognitive and dizziness issues anywhere in her functional assessment. (Tr. 370). Moreover, the ALJ fully discussed plaintiff's complaints of memory loss and cognitive impairment in his decision. (Tr. 22). As the ALJ noted, plaintiff was diagnosed with a mild cognitive impairment in September 2019. (Tr. 22, citing Tr. 1874). The ALJ also noted examinations showing plaintiff's memory was intact; she had normal fund of knowledge; and she had average cognition/intelligence. (Tr. 22, citing Tr. 438 (April 2019 mental status exam); Tr. 441 (May 2019 mental status exam); Tr. 486 (May 2019 neurology exam); Tr. 1665 (March 2020 mental status exam)). The ALJ also considered

plaintiff's complaints of dizziness. (Tr. 20). As the ALJ reasonably noted, the work ups performed to determine the etiology of plaintiff's dizziness were unremarkable. (Tr. 20, citing Tr. 487, 1874, 2693, 2696). The ALJ explained that plaintiff's dizziness may relate to hypotension or poly pharmacy, but plaintiff was never diagnosed with either of those conditions; plaintiff's cardiovascular exams were repeatedly unremarkable; and plaintiff's exams showed a negative Romberg (a test to diagnose balance problems). (Tr. 20, citing Tr. 487, 1494, 1903, 1904, 2682). The ALJ did not disregard the probative evidence relating to plaintiff's memory and complaints of dizziness.

Moreover, plaintiff does not take issue with any of the other reasons given by the ALJ in determining the persuasiveness of Dr. Wright's opinion. Consistent with the regulatory requirements, the ALJ considered the supportability of Dr. Wright's own examination findings with her restrictive opinion. *See* 20 C.F.R. § 416.920c(c)(1). The ALJ noted that Dr. Wright's exam findings showed plaintiff exhibited normal range of motion in her musculoskeletal system with no mention of any neurological deficits or gait abnormalities. (Tr. 32, citing Tr. 497, 1466, 1486, 1494, 2695-96, 2741, 2753, 2763, 2772, 2781, 2790, 2799). The ALJ also considered the consistency of Dr. Wright's opinion with the other record evidence. *See* 20 C.F.R. § 416.920c(2). The ALJ reasonably determined that plaintiff had fairly normal findings on physical examinations, including a normal gait, muscle strength, and sensation. (Tr. 33, citing Tr. 491, 1768, 1810, 1844, 1943, 2682; *see also* Tr. 2037, 2054). While Dr. Wright opined that plaintiff was limited in use of her upper extremities to 20% to 30% in an 8-hour workday, the ALJ noted that plaintiff had unremarkable hand x-rays, and her examinations frequently showed

12

normal strength and no synovitis. (Tr. 33, citing Tr. 489, 1765, 1768, 2682). Lastly, the ALJ considered plaintiff's daily activities, including exercising regularly, shopping, and babysitting her grandchildren. (Tr. 33, citing Tr. 294, 440, 1601, 1619-21, 1637, 2673). The ALJ's assessment of Dr. Wright's opinion is supported by substantial evidence. Plaintiff's first assignment of error is overruled.

### 2. *The ALJ's RFC Assessment*

In her second assignment of error, plaintiff argues the ALJ erred when he assessed plaintiff's physical RFC based solely on his own lay interpretation of the evidence. Plaintiff alleges the RFC must be supported by at least one medical opinion. (Doc. 10 at PAGEID 2888-89, citing district court cases). Plaintiff contends there were no medical opinions on which the ALJ could rely because he failed to order a physical consultative examination; he rejected the opinion of plaintiff's primary care physician; and he assessed the findings of the state agency medical consultants as not fully persuasive[6] because greater limitations were required based on the new evidence submitted after the consultants rendered their opinions.

The RFC assessment is an evaluation of the most a claimant can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ is vested with the responsibility for assessing a claimant's functional capacity based on the relevant medical and other evidence. 20 C.F.R. §§ 416.927(d)(2), 416.945(a)(3), 416.946. *See Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006). "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v.*

---

[6] The ALJ found the state agency medical consultants' opinions "mostly persuasive." (Tr. 33).

13

*Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); *Dixon v. Massanari*, 270 F.3d 1171, 1177-78 (7th Cir. 2001)). The ALJ's RFC determination must be supported by substantial evidence. *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *4 (6th Cir. Aug. 10, 2020).

Contrary to plaintiff's argument, the ALJ need not base the RFC determination on a medical opinion. The Sixth Circuit has addressed this precise issue as follows:

> [The plaintiff] contends that once the ALJ decided to give no weight to the physicians' opinions regarding his ability to work, the ALJ was required to get the opinion of another physician before setting the residual functional capacity. We disagree. We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ. *See Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2017) (rejecting the argument that "the ALJ's [residual functional capacity] lacks substantial evidence because no physician opined that [the claimant] was capable of light work"); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the same argument because "the ALJ is charged with the responsibility of determining the [residual functional capacity] based on her evaluation of the medical and non-medical evidence"). We similarly find no error here. The ALJ undertook a laborious evaluation of the medical record when determining the residual functional capacity, and substantial evidence supports the ALJ's conclusions.

*Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401-02 (6th Cir. 2018). "'[T]o require the ALJ to base h[is] RFC finding on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'" *Shephard*, 705 F. App'x at 442 (quoting *Rudd*, 531 F. App'x at 728).

Aside from arguing that the ALJ's RFC must be supported by at least one medical opinion, plaintiff does not explain why the RFC is not supported by substantial evidence or cite any evidence indicating plaintiff was more limited than the ALJ found. Plaintiff has not met her "burden of demonstrating a RFC more restrictive than that determined by the ALJ." *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The Court overrules plaintiff's second assignment of error.

3. *Use of Assistive Device*

Plaintiff argues that her RFC should have included the use of a rolling walker. (Doc. 10 at PAGEID 2890-91). Plaintiff states that on December 6, 2018, Dr. Ali prescribed a rolling walker with a seat with instructions to use daily. (Tr. 574). Plaintiff cites October and November 2018 pain management records noting that plaintiff ambulated with a walker (Tr. 358, 364), and mental health records from April 2019 reflect that plaintiff walked with a cane and has a walker. (Tr. 445, 459). Plaintiff also cites to September 10, 2019 treatment notes from Dr. Wright stating that plaintiff should use a walker or cane to ambulate at all times given her dizziness. (Tr. 2763). Lastly, Dr. Rajan, who examined plaintiff for memory issues on September 20, 2019, noted plaintiff's gait was unsteady and slightly ataxic and "[p]atient uses a cane to ambulate." (Tr. 1873).

The ALJ determined that plaintiff's use of a cane or other assistive device for ambulation was not medically necessary:

> The claimant alleges she has to use a cane for ambulation. However, the objective record does not support this to the level alleged. While a few exams note the use of a cane, many more exams note normal gait, note the claimant was not using an assistive device, or fail to note use of an assistive, which suggests she was not using

15

> an assistive as subsequent records by that provider noted cane use in November 2020 (C11F94, 136, 170, 363, 380, 521, C12F17, C13F122, for example). As such, the undersigned finds the use of a cane or other assistive device is not medically necessary. Please note that per vocational expert testimony, all sedentary jobs listed below would remain with the following additional limitation: Allowed the option to use a hand held assistive device for ambulation and the contralateral upper extremity can be used to lift and carry up to the exertional limits.

(Tr. 29).

The ALJ need not incorporate use of a cane or other hand-held assistive device into the RFC unless that device is medically required, in which case the device is considered a limitation on a claimant's ability to work. *See Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002); *see also Baker v. Comm'r. of Soc. Sec.,* No. 2:19-cv-4323, 2020 WL 2213893, at *7 (S.D. Ohio May 7, 2020). Social Security Ruling 96-9p explains when a cane or other hand-held assistive device is "medically required" and the implications of that medical need for a claimant's RFC:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). The "burden to prove through clinical evidence that a cane is medically required" is on the claimant. *Baker,* 2020 WL 2213893, at *7 (quoting *Strain v. Comm'r of Soc. Sec. Admin.*, No. 5:12-cv-1368, 2013 WL 3947160, at *2 (N.D. Ohio Aug. 1, 2013)).

16

The ALJ determined that plaintiff's use of a cane or other assistive device was not medically required, noting the conflicting evidence about plaintiff's cane use on a consistent basis. Mercy Hospital health records indicate plaintiff was prescribed a rolling walker on October 3, 2017 by Dr. Wright. (Tr. 2064). The "Current Medications" section of the record lists plaintiff's prescriptions and medical devices and the prescribing physician. (Tr. 2063-64). The notation regarding a walker states, "Misc. Devices (ROLLER **WALKER**) MISC Use daily, please provide rolling **walker** with a seat 10/3/17 Robin Alicia Wright, MD." (Tr. 2064). This same notation appears almost verbatim in the subsequent Mercy Health records under the "Medications" heading. (Tr. 574, 12/6/18-Dr. Ali; Tr. 2051, 3/20/19-Dr. Ali; Tr. 2034, 5/12/19-Dr. Ali; Tr. 1841, 10/31/19-Dr. Ali; Tr. 1807, 4/9/20-Dr. Ali; Tr. 1805, 4/14/20-Dr. Zimmer; Tr. 1764, 7/9/20-Dr. Ali). Yet those same records also showed physical examination findings of normal gait with no signs of ataxia (Tr. 1768, 1810) or "ambulates without assistance, normal gait" (Tr. 491, 1844, 2037, 2054). Similarly, a September 22, 2022 examination showed plaintiff exhibited "gait steady, joints free of swelling, tenderness and warmth, and no crepitus or bony enlargement." (Tr. 2682). In contrast, Dr. Wright's notes from September 10, 2019 state plaintiff must "use walker or cane to ambulate at all times" due to dizziness (Tr. 2763), and Dr. Haq's records from November 3, 2020 note plaintiff "uses cane for walking." (Tr. 2812). Whether plaintiff required a cane or walker "at all times" for ambulation was a disputed question of fact for the ALJ. "[W]here there is conflicting evidence concerning the need for a cane, 'it is the ALJ's task, and not the Court's, to resolve conflicts in the evidence.'" *Forester v. Comm'r of Soc. Sec.*, No. 2:16-cv-1156, 2017 WL 4769006, at *4 (S.D. Ohio Oct. 23, 2017) (citing

17

*Foreman v. Comm'r of Soc. Sec.*, No. 2:10-cv-1008, 2012 WL 1106257, at *4 (S.D. Ohio Mar. 31, 2012)). In view of the conflicting evidence cited above, the ALJ's decision determining that "the use of a cane or other assistive device is not medically necessary" (Tr. 29) is supported by substantial evidence.

In any event, any error by the ALJ in excluding a hand-held device in the RFC would be harmless. At the hearing, the ALJ posed a hypothetical question which included the use of a hand-held assistive device for ambulation in the RFC. (Tr. 58). The VE testified that use of a hand-held device would eliminate the light jobs but "would not affect the sedentary positions" he identified. (Tr. 58). The ALJ noted this fact in his decision (Tr. 29), and plaintiff has not challenged the VE's testimony or ALJ's decision in this regard. Plaintiff's third assignment of error is overruled.

### IT IS THEREFORE ORDERED THAT:

Based on the above, plaintiff's Statement of Errors (Doc. 10) is **OVERRULED,** and the Commissioner's non-disability finding is **AFFIRMED. IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date: 7/7/2023

Karen L. Litkovitz
Chief United States Magistrate Judge